IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANDELENE ASTACIO-RIVERA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL,[1] | : | |
| Acting Commissioner of Social Security | : | |
| Administration | : | NO. 16-1276 |

## REPORT AND RECOMMENDATION

THOMAS J. RUETER
United States Magistrate Judge                                    April 12, 2017

Plaintiff, Mandelene Astacio-Rivera, filed this action pursuant to 42 U.S.C. §

405(g), seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("Act") and supplemental security income ("SSI") under

Title XVI of the Act.

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review

("Pl.'s Br.") and defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br."). For

the reasons set forth below, this court recommends that plaintiff's Request for Review be

**DENIED**.

## I.       FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI alleging disability beginning July 16,

2011. (R. 175-208.) The claims were denied initially and a request for a hearing was timely

---

[1]       On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social
Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy
A. Berryhill should be substituted as the defendant in this case.

filed. (R. 109-38.) A hearing was held on March 25, 2014, before Administrative Law Judge

("ALJ") Jay Marku. (R. 68-108.) Plaintiff, represented by counsel, appeared and testified.

Denise Cordes, a vocational expert ("VE"), also appeared and testified. In a decision dated June

3, 2014, the ALJ found that plaintiff was not disabled under the Act. (R. 52-66.) The ALJ made

the following findings:

1. The claimant met the insured status requirements of the Social Security Act as of her alleged onset date and continues to meet them through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since July 16, 2011, her alleged onset of disability (20 CFR 404.1520(b), 404.1571, et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: degeneration of the L5-S1 disc with minimal protrusion and annular tear without significant stenosis; degenerative disc disease of the cervical spine with radiculopathy; residuals of surgery for an oblique tear of the posterior horn of medial meniscus of the right knee; sensorimotor polyneuropathy and bilateral tarsal tunnel syndrome; asthma; major depression; fibromyalgia; and moderately decreased systolic global functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. Considering all the evidence, the undersigned concludes the claimant remains capable of performing sedentary work activity (i.e., work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, and requires only limited walking and standing). She is limited to work activity that involves simple, routine tasks requiring no more than reasoning level "2," and to work that involves no more than occasional contact with the public, coworkers, and supervisors. The claimant cannot work on assembly lines or in teams, and can tolerate little change in the work setting or work processes. She is limited to work involving no more than occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity (20 CFR 404.1567(a), 416.967(a)).

6. The claimant cannot perform her past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on September 24, 1968, and is 45 years old, which is defined as a "younger person" (20 CFR 404.1563 and 416.963).

8.      The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Considering the claimant's age, the issue of transferability of work skills is not material to this decision (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are a significant number of jobs that exist in the regional and national economy that she can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been disabled within the meaning of the Social Security Act at any time from July 16, 2011, through the date of this decision (20 CFR 404.1520(g), and 416.920(g)).

(R. 54-62.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner.  (R. 3-11, 47-48.)

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g), cert. denied 134 S. Ct. 1274 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118

(3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

 To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 423(d)(5).

 The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden.  20 C.F.R. §§ 404.1520, 416.920.  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience.  See id.  The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the

claimant is capable of performing other jobs existing in large numbers in the national economy. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    BACKGROUND

At the administrative hearing on March 25, 2014, plaintiff testified that she was forty-five years old and unmarried.  (R. 74-75.)  Plaintiff lived with her fifteen and seventeen year old daughters, as well as her twenty-four year old son.  (R. 96.)  Plaintiff completed two years of a college education.  (R. 77.)  Plaintiff is able to read and write, and do some math, but explained that her memory is poor.  Id.  Plaintiff has a driver's license, but stated that her doctor did not want her to drive and that she had not driven in the prior six months.  (R. 75.)  She was driven to the administrative hearing by her brother.  Id.

Plaintiff's past work includes employment as a secretary.  (R. 77.)  When she worked at Merrill Corporation, a document reproduction company, plaintiff was responsible for taking orders from customers.  (R. 77-78.)  She worked eight hours per day, with some of the time spent sitting and some of the time spent standing.  (R. 78.)  At most, she lifted three pounds. Id.

Plaintiff has not worked since July 16, 2011.  (R. 80.)  Plaintiff explained that she is unable to work because she cannot lift or carry anything due to a pinched nerve in her arm which causes her to drop whatever she is holding.  Id.  Plaintiff also stated that she is unable to concentrate and is in excruciating pain every day.  Id.  Plaintiff asserted that she was laid off from her last job because she was unable to perform her responsibilities.  Id.  She collected unemployment benefits for "two or three years" after she was laid off.  (R. 81.)

With respect to her physical condition, plaintiff described pain in her hip and back.  Id.  Plaintiff further stated: "I have pinched nerves.  I have a herniated disc, and I have

arthritis in my lower back; and in my arm, pinched nerves.  And I have arthritis on my right knee.  I have fibromyalgia.  I have thyroid disorder.  I mean, I have high blood pressure that's uncontrollable.  And I get a lot of faint[ing] spells, daily."  Id.  Plaintiff also described forgetfulness, poor vision, and difficulty with sleep.  (R. 81-82, 85, 96.)  Plaintiff detailed a long list of medications including, Losartan, Endocet, Omeprazole, Oxycodone, Methyldopa, Nifedipine, Hydrochlorothiazide, Hydrocodone, Clonidine, Albuterol, Levothyroxine, Synthroid, Methyldopa, Cymbalta, Zanaflex, Diazepam, and Valium.  (R. 82-84.)  When asked whether she experiences side effects from the medication, plaintiff explained that she "tend[s] to rest a lot.  I don't know if that's due to – but I'm always tired."  (R. 85.)  According to plaintiff, the medications temporarily alleviate her pain, but do not eliminate it.  Id.  Plaintiff attempted physical therapy but no longer engaged in it because it was not beneficial.  Id.  When the ALJ inquired whether surgery had been recommended, plaintiff explained that she had an appointment with a surgeon later that day to discuss possible torn ligaments in her right hip.  (R. 85-86.)  Plaintiff described her pain as "at times, it's burning on my bottom of my toe, my right side, in which I was told it was signs of nerve damage.  My back is very sharp, dull pain that shoots down into my hip and down to my right leg."  (R. 86.)  Plaintiff further stated: "and then on my buttocks area, sciatic nerve.  And then my neck, which at times I tend to have to lift my neck a lot to make the pain – like alleviate it."  Id.  Plaintiff reported that she is "in pain every day, all day" and nothing relieves it.  Id.  Plaintiff also indicated that she experiences migraine headaches.  (R. 100-01.)

Plaintiff claimed that she "can't even walk a whole block . . .  not even a half." (R. 88.)  Plaintiff can stand for no longer than fifteen minutes; she is unable to bend.  (R. 88-89.) Plaintiff stated that she can sit for fifteen to twenty minutes.  (R. 90.)  Plaintiff, who is right-

handed, wears a splint on her right hand and has carpal tunnel syndrome in her right hand. (R. 89.) She described numbness and tingling in her right hand; she cannot lift anything heavy with that hand. Id. However, she is able to lift an item as heavy as her handbag with her left hand. (R. 90.) Plaintiff began using a cane for ambulation approximately one year prior to the administrative hearing. (R. 98.) She indicated that her right knee buckles at times. (R. 99.) She needs the cane to walk and indicated that she would "tumble to the side" if she did not use it. Id. Plaintiff wears a brace on her right knee. Id. She had surgery to repair three torn ligaments in her right knee approximately one to two years prior to the administrative hearing. (R. 100.) Plaintiff also described the weekly mental health treatment she receives for depression and anxiety. (R. 90-93.)

With respect to her daily activities, plaintiff described experiencing pain and stiffness upon awakening. (R. 97.) Due to pain, plaintiff spends most of the day in bed. Id. Plaintiff watches television and performs light cooking. (R. 92, 96.) Plaintiff is able to perform self-care, with some help from her daughters. (R. 96.) When plaintiff goes shopping with her children, she utilizes a motorized cart if one is available. (R. 97.) Plaintiff's children perform most of the household chores. (R. 98.) Plaintiff likes to read the Bible and attends church every Sunday. Id. She indicated that she does not like to be around a lot of people and feels uncomfortable around strangers. (R. 92-93.)

The VE classified plaintiff's past work as a secretary as skilled work, performed at the sedentary level, although plaintiff indicated that she had been able to sit or stand at will. (R. 103.) The ALJ asked the VE to consider a hypothetical individual of the same age, education and work experience as plaintiff, who is limited to light exertion involving simple, routine tasks requiring no more than reasoning level two, involving occasional contact with the public,

coworkers, and supervisors, with no work on assembly lines or in teams, with little change in the work setting or work processes, and also involving occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity.  Id.  The VE opined that such an individual could not perform plaintiff's past work, but there are other jobs existing in significant numbers in the national economy for this hypothetical individual.  Id.  The VE opined that the hypothetical individual could perform the jobs of housekeeper, which is unskilled, light work (for which there are approximately 7,000 jobs regionally and 450,000 nationally) and bakery products inspector (for which there are approximately 600 jobs regionally and 84,000 jobs nationally).  (R. 104.)

The ALJ then asked the VE to consider the same hypothetical individual, but who is limited to sedentary exertion.  Id.  The VE responded that the hypothetical individual could perform the following unskilled, sedentary jobs: pharmaceutical packager (of which there are 1,500 jobs regionally and 300,000 nationally); eyeglass assembler (of which there are 600 jobs regionally and 210,000 nationally); and gauger (of which there are 800 regionally and 200,000 nationally).  (R. 104-05.)  If the hypothetical individual were to be off-task for periods of ten minutes or more per hour throughout course of an eight hour work day, such individual would not be able to perform these jobs, or other jobs that exist in significant numbers.  (R. 105.)  If such individual were to be absent from work at least two days a month throughout the course of a work year, she would not be able to perform these or any other jobs.  Id.  The VE stated that her testimony was consistent with the Dictionary of Occupational Titles.  Id.

IV.     DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has the following severe impairments: degeneration of the L5-S1 disc with minimal protrusion and annular tear without significant stenosis; degenerative disc disease of the cervical spine with

radiculopathy; residuals of surgery for an oblique tear of the posterior horn of medial meniscus of the right knee; sensorimotor polyneuropathy and bilateral tarsal tunnel syndrome; asthma; major depression; fibromyalgia; and moderately decreased systolic global functioning, impairments which do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 54-55.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform sedentary work activities, except that she is limited to work activity that involves simple, routine tasks requiring no more than reasoning level "2," and to work that involves no more than occasional contact with the public, coworkers, and supervisors. (R. 56.) The ALJ further limited plaintiff by finding that she cannot work on assembly lines or in teams and can tolerate little change in the work setting or work processes. Id. In addition, plaintiff is limited to work involving no more than occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity. (R. 56-57.) Plaintiff contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff avers that the ALJ erred by failing to find right carpal tunnel syndrome and trochanteric bursitis of the right hip to be severe impairments and by failing to properly consider plaintiff's fibromyalgia.[2] (Pl.'s Br. at 4-9.) Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 5-9.)

A. **Step Two Finding**

At step two of the sequential analysis, the ALJ found the following severe impairments: degeneration of the L5-S1 disc with minimal protrusion and annular tear without significant stenosis; degenerative disc disease of the cervical spine with radiculopathy; residuals of surgery for an oblique tear of the posterior horn of medial meniscus of the right knee;

---

[2]    Plaintiff is not contesting the ALJ's conclusion regarding her mental impairments. (Pl.'s Br. at 5 n.1.)

sensorimotor polyneuropathy and bilateral tarsal tunnel syndrome; asthma; major depression; fibromyalgia; and moderately decreased systolic global functioning. (R. 54-55.) However, the ALJ also found that plaintiff's alleged impairments of, inter alia, right carpal tunnel syndrome and right hip pain were not severe impairments. (R. 55.) Plaintiff argues that the ALJ erred in making this determination. (Pl.'s Br. at 4-7.)

The regulations guide that at step two of the sequential analysis, the ALJ must determine whether the claimant has a severe impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe if it does not significantly limit an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[3] Examples of basic work activities include, inter alia, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. §§ 404.1521(b), 416.921(b). Regarding the proper analysis, the Third Circuit has stated that the "burden placed on an applicant at step two is not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). An applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Id. (citing SSR 85-28, 1985 WL 56856, at *3). Reasonable doubts regarding the severity of the impairment are to be resolved in favor of the applicant. Id. (citing Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546-47 (3d Cir. 2003)).

---

[3] The Social Security Administration promulgated amendments to selected regulations effective March 27, 2017. The regulations governing how the Commissioner determines severity, previously codified at 20 C.F.R. §§ 404.1521 and 416.921, were recodified at 20 C.F.R. §§ 404.1522 and 416.922. For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision.

If an ALJ erroneously concludes that an impairment is not severe at step two, such error, nevertheless, may be harmless if the ALJ considers the effects of the impairment in assessing a claimant's RFC.  See, e.g., Lee v. Astrue, 2007 WL 1101281, at *3 n. 5 (E.D. Pa. Apr. 12, 2007) (noting that the ALJ's determination at step two would not warrant remand if the ALJ proceeded with the five step sequential evaluation process and properly analyzed the claimant's limitations, considering both severe and non-severe limitations).  That is, "even if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five."  McClease v. Comm'r of Soc. Sec., 2009 WL 3497775, at *10 (E.D. Pa. Oct. 28, 2009).  See also Salles v. Comm'r of Soc. Sec., 229 F.App'x 140, 145 n.2 (3d Cir. 2007) (not precedential) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

In the present case, ALJ acknowledged at step two of the sequential analysis that plaintiff had been diagnosed and treated for "mild right carpal tunnel syndrome," and other conditions, but concluded that "the medical evidence does not establish that these conditions have caused more than minimal work-related limitations."  (R. 55.)  Plaintiff argues that "the ALJ relied on a report from May 2010, which was prior to her onset date, that described the condition as mild (Tr. 354).  Subsequent reports did not describe the condition as mild (Tr. 331-332, 477-478)."  (Pl.'s Br. at 4.)  Plaintiff avers that the diagnosis of right carpal tunnel syndrome "has continued; she has been prescribed a wrist splint for the condition (Tr. 477-478, 89).  She testified that [she] had numbness and tingling in her right hand and was constantly dropping things; she is right-handed but is unable to write much more than her name.  (Tr. 89)."

(Pl.'s Br. at 7.)  With respect to trochanteric bursitis of the right hip, the ALJ stated, "[i]n August 2013, the claimant was treated for right hip pain and diagnosed with trochanteric bursitis (Exhibit 27F, p. 24).  This impairment may not last the required twelve months at any degree of severity with continued medication and treatment.  Therefore, the claimant's right hip bursitis is not considered to be a severe impairment at this time."  (R. 55.)  Plaintiff argues that although it was not diagnosed until August 2013, plaintiff had complained of right hip pain since at least October 2011.  (Pl.'s Br. at 4.)

The court notes that the claimant has the burden of showing that an impairment is severe.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  A medical diagnosis is insufficient to establish severity at step two; a claimant also must present evidence that these limitations significantly limited her ability to do basic work activities.  Salles, 229 F.App'x at 144-45 (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a); Ramirez v. Barnhart, 372 F.3d 546, 551 (3d Cir. 2004)).  In addition, "a medical condition which begins during a claimant's insured period, but does not become disabling until after its expiration, may not be the basis for qualification for disability benefits under the Act."  Capoferri v. Harris, 501 F.Supp. 32, 36 (E.D. Pa. 1980), aff'd, 649 F.2d 858 (3d Cir. 1981) (citing Capaldi v. Weinberger, 391 F.Supp. 502, 503 (E.D. Pa. 1975)).  When he determined that trochanteric bursitis of the right hip was not a severe impairment, the ALJ explained that such condition, diagnosed in August 2013, did not meet the durational requirement of the Act.  The Act and supporting regulations require that the medically determinable impairment "has lasted or can be expected to last for a continuous period of not less than 12 months."  See 42 U.S.C. § 423(d)(1)(A) and 20 C.F.R. §§ 404.1509, 416.909.  See also

Cerrato v. Comm'r of Social Sec., 386 F.App'x 283, 285-86 (3d Cir. 2010) (not precedential) (an impairment must last the requisite twelve months to qualify a claimant for disability benefits).[4]

In any event, the ALJ did not deny plaintiff benefits at step two, but rather, continued with the sequential analysis and considered limitations caused by right carpal tunnel syndrome and right hip bursitis. When assessing plaintiff's RFC, the ALJ considered the evidence pertaining to plaintiff's right hand and right hip, and ultimately determined that plaintiff has the RFC to perform sedentary work. See R. 56-60. The ALJ noted that at the hearing plaintiff walked with a cane in her right hand and acknowledged plaintiff's testimony that she "drops things with her right hand." (R. 57.) The ALJ also noted plaintiff's testimony that she cannot work because she drops things due to a pinched nerve in her arm and plaintiff's description of daily pain affecting her hip. See id. However, the ALJ also reasoned that despite plaintiff's testimony that "her impairments cause significant physical limitations, including quite limited ability to walk, stand[], sit, perform postural activities, and hold things with her right hand," such "testimony concerning the extent of her limitations is not well-supported by the medical evidence." (R. 58-59.)

In reaching his decision, the ALJ considered the May 2013 detailed notes of a physical examination and EMG study prepared by physiatrist, Sara Tabby, M.D. See R. 59, 419-21. When discussing plaintiff's medical history, Dr. Tabby noted that plaintiff "was told she had carpal tunnel syndrome." (R. 419.) Dr. Tabby observed that plaintiff had full active range of motion in her upper extremities, negative straight leg raising test and sitting root signs, and

_____

[4]     The administrative record contains medical records dated July 28, 2014 to January 26, 2015 from the University of Pennsylvania Department of Rheumatology. See R. 12-41. A medical record from this time period, which postdates the ALJ's decision, indicates that a December 2014 MRI of plaintiff's right hip showed no trochanteric bursitis and indicated "no definite etiology for hip pain." (R. 30, 38.)

muscle strength was noted to be 4/5.  Id.  Dr. Tabby described plaintiff's gait as "decreased right stance and advancement, uneven cadence, medium base of support with inability to walk on heels, toes and in tandem."  Id.  Dr. Tabby recorded her impression as: "Right medial meniscectomy, fibromyalgia and polyneuropathy.  Bilateral C6-7 and L5 radiculopathy.  See EMG report."  Id.

The ALJ also considered the medical records of Srilatha Kothandarman, M.D., of the Rheumatology Clinic of Temple University.  See R. 59, 486.  The ALJ noted:

> In August 2013, the claimant underwent a rheumatology examination.  Despite her complaints of right hip pain, her gait was normal, and the musculoskeletal examination revealed no swelling or tenderness.  The claimant was diagnosed with and treated for right trochanteric bursitis, and some diminished right hand grip strength was noted; however, most of the examination findings were normal (Exhibit 27F, p. 23).

(R. 59.)  At this examination, plaintiff was given an injection for the hip pain.  (R. 487.)  During a follow-up visit in September 2013, the original assessment was confirmed and plaintiff received an additional injection.  (R. 493.)  Plaintiff continued to complain of right hip pain at a subsequent visit in February 2014.  (R. 472.)

After considering all of the evidence, the ALJ concluded that plaintiff's impairments limit her to no more than sedentary work.  (R. 59.)  With respect to carpal tunnel syndrome, the ALJ also reasoned: "[t]he claimant's right carpal tunnel syndrome was described as mild (Exhibit 8F, p. 13).  Therefore, the undersigned finds her testimony concerning her problems with her right hand less than fully credible.  She walks with a cane in her right hand, but this factor should not affect her ability to perform sedentary work."  Id.  As noted supra, the ALJ explained that plaintiff's trochanteric bursitis of the right hip may not last the required twelve months at any degree of severity with continued medication and treatment and concluded that right hip bursitis was not considered to be a severe impairment at that time.  See R. 55.

Plaintiff contends that the medical evidence concerning right carpal tunnel syndrome and right hip bursitis do not support a determination that plaintiff can perform even sedentary work. In so arguing, plaintiff essentially seeks to have this court re-weigh the evidence and reach a different conclusion. A reviewing court may not set the Commissioner's decision aside if it is supported by substantial evidence, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). Although the record contains evidence of a diagnosis of carpal tunnel syndrome, the ALJ acknowledged and considered this fact when conducting the sequential analysis. As discussed supra, the proper analysis at step two of the sequential analysis requires the ALJ to determine whether the claimant has a severe impairment which significantly limits the claimant's physical ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ acknowledged plaintiff's claims that she cannot lift anything and that she drops things with her right hand, but plaintiff also testified that she walks with a cane in her right hand and that she had done so for approximately one year prior to the administrative hearing. She indicated that she needs the cane to walk and that she would "tumble to the side" if she did not use it. See R. 57, 98-99. The ALJ reasoned that the extent of plaintiff's limitations are not well-supported by the medical evidence. See R. 59. The ALJ gave adequate reasons for his finding that carpal tunnel syndrome was not a severe impairment and the record supports this finding. In addition, the ALJ did not err when he determined that trochanteric bursitis of the right hip was not a severe impairment because it did not meet the durational requirement of the

Act and its supporting regulations. Thus, substantial evidence supports the ALJ's decision regarding such impairments.

### B.     Assessment of Fibromyalgia

Plaintiff argues that the ALJ failed to properly consider the effects of plaintiff's fibromyalgia on her ability to work. (Pl.'s Br. at 7-8.) Fibromyalgia is "pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." Dorland's Illustrated Medical Dictionary, 703 (32nd ed. 2012). It "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least [three] months." Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). Plaintiff contends that her consistent complaints of pain are well documented in the medical records, along with the diagnoses of fibromyalgia. (Pl.'s Br. at 7-8.) Defendant avers that the medical record supports the ALJ's finding that plaintiff has the capacity to perform sedentary work. (Def.'s Br. at 5-9.)

Plaintiff first argues that the ALJ accepted plaintiff's diagnosis of fibromyalgia and found it to be a severe impairment, but did not discuss whether the condition met or medically equaled the criteria of a listed impairment, other than making a general conclusion that plaintiff's impairments in toto did not meet or equal the criteria of a Listing. (Pl.'s Br. 7.) However, the ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A) (providing that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require"); see also 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish

medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are disabled, its effect on your ability to work on a sustained basis.").  With respect to the sequential analysis, it is well-established that the plaintiff bears the burden of establishing steps one through four, while the burden shifts to the Commissioner at step five.  Bowen, 482 U.S. at 146 n.5.  In accordance with these standards, plaintiff bears the burden of presenting medical findings showing that her impairments meet or equal a listed impairment.  See id.; Brown v. Bowen, 845 F.2d 1211, 1213-14 (3d Cir. 1987) (citing Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)).  Plaintiff has simply not made such a showing.

SSR 12-2p explains how fibromyalgia is considered at step three of the sequential analysis:

> At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1).  [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment.  At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

2012 WL 3104869, at *6 (S.S.A. July 25, 2012).  In the present case, after finding fibromyalgia to be a severe impairment at step two, the ALJ considered the following, inter alia, at step three:

> Although the medical record documents some significant physical symptoms and limitations, and the claimant described significant limitations in her ability to walk, stand, and sit, the medical evidence does not establish that her impairments meet or equal the criteria of Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine) or any impairment described under Listing 1.00 (musculoskeletal system), which require evidence of serious pathology and functional limitations such as inability to ambulate effectively or to perform fine and gross movements effectively.

(R. 55.)  The ALJ also found that plaintiff's cervical radiculopathy and tarsal tunnel syndrome do not meet or equal the criteria of Listing 11.14 (peripheral neuropathies) or any impairment described at Listing 11.00 (neurological), which require evidence of significant disorganization of motor function or other serious clinical signs.  (R. 56.)

Moreover, the ALJ need not cite specific Listings as long as the ALJ's review of the record permits meaningful review of the step three analysis.  Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004) (finding that although an ALJ must set forth the reasons for his decision an ALJ is not required to use particular language or adhere to a particular format in conducting his analysis).  See Lopez v. Comm'r of Soc. Sec., 270 F.App'x 119, 121 (3d Cir. 2008) (not precedential) (finding that the ALJ's failure to discuss specific Listings is not reversible error under Jones because the ALJ analyzed all the probative evidence and explained his decision sufficiently to permit meaningful judicial review); Scuderi v. Comm'r of Soc. Sec., 302 F.App'x 88, 90 (3d Cir. 2008) (not precedential) ("Thus, an ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements.").  The ALJ's decision demonstrates that he reviewed the probative evidence and provided a thorough explanation for his analysis at step three.  See Poulos, 474 F.3d at 93 (the ALJ's analysis must provide a sufficient framework of reasoning for a court to conduct "meaningful judicial review" of the ALJ's decision).

The medical record further demonstrates that the ALJ's step three analysis is supported by substantial evidence.  Despite plaintiff's complaints of pain in the medical records and at the administrative hearing, Third Circuit case law does not dictate that a plaintiff's complaints of pain must be accepted by the ALJ.  Rather, an ALJ must consider the statements of

a claimant concerning his symptoms, but the ALJ is not required to credit them.  Chandler, 667

F.3d at 363 (citing SSR 96-7p, 20 C.F.R. § 404.1529(a)).[5]  It is within the province of the ALJ to

evaluate the credibility of witnesses.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

An ALJ's "findings on the credibility of claimants 'are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility.'"  Irelan v. Barnhart, 243 F.Supp. 2d 268, 284 (E.D. Pa. 2003) (citing Walters v.

Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)), aff'd, 82 F.App'x 66 (3d Cir. 2003).

An ALJ may disregard subjective complaints when contrary evidence exists in the record.

Mason v. Shalala, 994 F.2d at 1067-68.  The ALJ must, however, provide his or her reasons for

doing so.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); Matullo v.

Bowen, 926 F.2d 240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain

where he has considered subjective complaints and specified reasons for rejecting claim).  See

also Kanakis v. Comm'r of Soc. Sec., 649 F.App'x 288, 293 (3d Cir. 2016) (not precedential)

---

[5]	Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), was superseded by
Social Security Ruling 16-3p effective March 16, 2016.  SSR 16-3p provides guidance about
how the Social Security Administration will evaluate statements regarding the intensity,
persistence, and limiting effects of symptoms in disability claims.  2016 WL 1119029 (S.S.A.
Mar. 16, 2016).  In particular, the Administration noted that it eliminated the use of the term
"credibility" from the sub-regulatory policy, as the regulations do not use that term.  Id. at *1.  In
so doing, the Administration clarified that subjective symptom evaluation is not an examination
of a claimant's character.  Id.  Rather, it will more closely follow regulatory language regarding
symptom evaluation.  Id.  Adjudicators are thereby instructed to consider all of the evidence in a
claimant's record when evaluating the intensity and persistence of symptoms after finding that
the claimant has a medically determinable impairment(s) that could reasonably be expected to
produce those symptoms.  Id. at *2.  Judge Posner of the Court of Appeals for the Seventh
Circuit explained that "the change in wording is meant to clarify that administrative law judges
aren't in the business of impeaching claimants' character; obviously administrative law judges
will continue to assess the credibility of pain assertions by applicants, especially as such
assertions often cannot be either credited or rejected on the basis of medical evidence."  See Cole
v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).  In the present case, the ALJ
issued his decision in June 2014, prior to the effective date of SSR 16-3p.  As such, the court will
refer to SSR 96-7p, which was in effect at the time of the ALJ's decision.

(finding that substantial evidence supported the ALJ's credibility determination because the ALJ provided a basis with support in the record for rejecting the claimant's testimony as incredible).[6]

In the case at bar, the ALJ found plaintiff's testimony regarding the limitations caused by her impairments was not supported by the record. (R. 57-60.) The ALJ noted plaintiff's testimony that she was unable to work because she is unable to lift anything, that she is in excruciating pain every day, and that she drops things because she has a pinched nerve in her arm. (R. 57.) The ALJ also acknowledged plaintiff's representation that she lost her last job because she was unable to perform her work, but noted that plaintiff then collected unemployment benefits for two or three years. Id. The ALJ also considered plaintiff's testimony that the relief she experiences from pain medication is not complete and is temporary. (R. 57-58.) With respect to her daily activities, the ALJ evaluated plaintiff's representation that "she always feels tired, sleeps poorly, and can no longer join in school activities with her kids." (R. 58.) The ALJ also considered the following:

> [Plaintiff] watches TV, takes her medications, brushes her teeth, takes a shower with help from her daughters, and does light cooking. She is able to pay her bills. She sometimes goes shopping, but rides in an electric cart. The claimant said she

---

[6]     Social security regulations direct ALJs to engage in a two-step process when considering plaintiff's subjective complaints. The regulations state that the Commissioner will consider all of a plaintiff's symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. See 20 C.F.R. §§ 404.1529, 416.929. Social Security Ruling 96-7p further directs that in "determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he . . . must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft, 181 F.3d at 362. See also SSR 12-2p, 2012 WL 3104869, at *5 (S.S.A. July 25, 2012) (describing the two-step process used to evaluate a person's statements about his or her fibromyalgia symptoms and functional limitations).

reads the Bible and she attends church for an hour on Sunday.  She said she does no housework.

Id.

The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but that her statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.  Id.  The ALJ reasoned that the evidence does not support plaintiff's description of her limitations.  In addition, the ALJ stated:

> The claimant testified that she collected unemployment compensation for two years.  The acceptance of such benefits generally requires the recipient to assert her readiness and ability to work; thus, receipt of such benefits tends to reflect adversely upon the credibility of an individual who simultaneously applies for Social Security disability benefits and, considering the lack of seriously abnormal physical examination findings, the undersigned concludes that it does so in this case.

Id.  The ALJ was entitled to consider plaintiff's receipt of unemployment benefits during the time period that she claims she was disabled to work.  See Myers v. Barnhart, 57 F.App'x 990, 997 (3d Cir. 2003) (not precedential) (finding it was "entirely proper" for the ALJ to consider that the plaintiff's receipt of unemployment benefits was inconsistent with a claim of disability during the same period but noting that the receipt of unemployment benefits was not the only reason for the ALJ's credibility assessment).  Moreover, the ALJ noted, "[t]he claimant's earnings record indicates a sporadic work activity at the substantial gainful activity level; this does not support her contention that she has been absent from the workforce for medical reasons (Exhibit 5D)."  Id.

The ALJ also reviewed the medical evidence which documented plaintiff's complaints of pain and the diagnoses of fibromyalgia.  See R. 58-60.  However, "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those

statements to a medical opinion." Morris v. Barnhart, 78 F.App'x 820, 824-25 (3d Cir. 2003) (not precedential) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)). See also Salles, 229 F.App'x at 148 (a lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC) (citing SSR 96-8p, 1996 WL 374184, at *1). Similarly, the ALJ properly considered plaintiff's daily activities when assessing plaintiff's RFC and credibility. "[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity" and an ALJ is permitted to consider them to evaluate the credibility of a plaintiff's subjective complaints of pain and other symptoms. Cunningham v. Comm'r of Social Sec., 507 F.App'x 111, 118 (3d Cir. 2012) (not precedential). See also Burns, 312 F.3d at 129-30 (finding substantial evidence supported ALJ's credibility analysis that considered the plaintiff's testimony concerning his activities of daily living). The ALJ did not rely uncritically upon plaintiff's activities of daily living as the basis for his RFC determination, but rather considered plaintiff's daily activities as one factor of his analysis.

Thus, the ALJ's decision demonstrates that he questioned the sincerity of plaintiff's statements concerning the intensity, duration, and limiting effects of her symptoms for several reasons. The ALJ considered plaintiff's subjective complaints in light of plaintiff's medical evidence and treatment history, her activities of daily living, testimony, and all of the other evidence of record, and ultimately concluded that plaintiff's condition was not severe enough to prevent her from performing sedentary work. This analysis satisfied the ALJ's obligation to explain why he determined that plaintiff's impairments were not as limiting as plaintiff claimed at the administrative hearing. See Burnett, 220 F.3d at 122; Matullo, 926 F.2d 240 at 245. The ALJ need not blindly accept the limitations that plaintiff claims. See Chandler,

667 F.3d at 363.  Ultimately, the final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In the case at bar, the ALJ credited plaintiff's subjective complaints to an extent by limiting her to a restricted range of sedentary work.

Again, plaintiff seeks to have the court re-weigh the evidence which it may not do.  See Chandler, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns, 312 F.3d at 118 (same).  The court finds that the ALJ sufficiently explained his reasons for finding plaintiff capable of performing sedentary work and that conclusion is supported by substantial evidence.

## V.  CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are supported by substantial evidence.  Accordingly, the court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this 12th day of April, 2017, upon consideration of plaintiff's Brief and Statement of Issues in Support of Request for Review and defendant's Response, it is respectfully recommended that plaintiff's Request for Review be **DENIED**.  The parties may file objections to the Report and Recommendation.  See Loc. R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


__/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MANDELENE ASTACIO-RIVERA :   CIVIL ACTION
           :
  v.         :
           :
NANCY A. BERRYHILL,[1]   :
Acting Commissioner of Social Security :
Administration      :    NO.  16-1276

## <u>ORDER</u>

    AND NOW, this day of   , 2017, upon consideration of Plaintiff's

Brief and Statement of Issues in Support of Request for Review and defendant's Response to

Request for Review of Plaintiff, and after review of the Report and Recommendation of United

States Magistrate Judge Thomas J. Rueter, it is hereby

<b>O R D E R E D</b>

   1.  The Report and Recommendation is **APPROVED** and **ADOPTED**.

   2.  Plaintiff's Request for Review is **DENIED**.

   3.  The Clerk of Court is hereby directed to mark this case closed.

         BY THE COURT:


        _____
        JUAN R. SÁNCHEZ,  J.

---

[1]  On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted as the defendant in this case.